**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PEDRO E. HERNANDEZ-CACERES,**<br>**Petitioner**<br><br>**v.**<br><br>**ATTORNEY GENERAL of the U.S.; and J. SAGE, Warden of FCI-Lewisburg,**<br>**Respondents** | : | **No. 3:26cv2125**<br><br>**(Judge Munley)** |

## MEMORANDUM ORDER

Before the court is a *pro se* petition for writ of habeas corpus filed by Petitioner Pedro E. Hernandez-Caceres under 28 U.S.C. § 2241.[1] (Doc. 1). Hernandez-Caceres challenges his present detention at FCI-Lewisburg by Immigration and Customs Enforcement ("ICE") and the Department of Homeland Security ("DHS"). Id. at 1–2. He seeks immediate release. Id. at 1. For the reasons set forth below, the petition will be granted in part. Under the law, petitioner is entitled to a bond hearing. One will be ordered to be held within 14 days.

[1] Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Hernandez-Caceres filed the instant petition while detained at FCI Lewisburg. (Doc. 1 at 2, 7–8, 10). The petitioner asserts that his continued detention, among other things, violates the Immigration and Nationality Act and his right to due process. Id. at 1, 3. Thus, the court has habeas jurisdiction over the petition. Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

**Background**

Hernandez-Caceres is a native and citizen of El Salvador. Id. ¶ 2. The government has removed the petitioner to El Salvador on three prior occasions, in 2009, 2012, and 2019. (Doc. 6-5, I-213 Form, at ECF p. 4). He has been convicted under the illegal reentry statute, 8 U.S.C. § 1326, on two prior occasions. Id. at ECF pp. 5–6.

On November 2, 2020, the Department of Justice placed Hernandez-Caceres on a gang member watchlist. Id. at ECF p. 5. The government alleges that he is a member of MS-13. (Doc. 6-4, I-213 Form, at ECF p. 8). He has been accused by the government of El Salvador of committing the crimes of aggravated homicide, extortion, and illicit groupings. Id. Petitioner disputes these allegations. (Doc. 7, Traverse at ECF p. 5). He indicates that he is not a gang member but has been designated as one in El Salvador and is unable to clear his record. Id. He asserts that he was initially told by Salvadoran authorities that he was not guilty of those charges and released after two years of incarceration. Id. Per the petitioner, his criminal charges have been reopened in El Salvador under the Bukele regime, and he fled to the United States for fear of persecution. Id.

On February 25, 2025, the FBI Immigration Enforcement Task Force apprehended Hernandez-Caceres near Annapolis, Maryland. (Doc. 6-5, I-213

Form, at ECF p. 4). He was placed in ICE custody and transferred to the Moshannon Valley Processing Center. (Doc. 6-10, A. Campbell Decl. ¶ 15). Thereafter, on April 4, 2025, an arrest warrant was issued by the United States District Court for the District of Maryland for violation of the illegal reentry statute. Id. ¶ 17. On April 9, 2025, the petitioner was released from ICE custody to address that charge. Id. ¶ 19. He pled guilty in the district court and was sentenced to time served on December 17, 2025.[2] United States v. Hernandez-Caceres, No. 1:25cr111-ELH (D. Md.), (Docs. 23–28). Petitioner was then returned to ICE custody on the same date. (Doc. 6-5, I-213 Form at ECF p. 3); (Doc. 6-10, A. Campbell Decl. ¶ 23). He was moved to FCI-Lewisburg on January 23, 2026. (Doc. 6-10, A. Campbell Decl. ¶ 24).

Upon his apprehension in February 2025, Hernandez-Caceres was served with a Form I-871, a notice of intent to reinstate a prior order of removal. (Doc. 6-5, I-213 Form, at ECF p. 4). On April 2, 2025, Hernandez filed a petition for review of that order with the Third Circuit Court of Appeals. (Doc. 6-10, A. Campbell Decl. ¶ 16). The Third Circuit temporarily stayed removal as a matter of course on April 9, 2025, granted the petitioner's motion to stay removal on August 27, 2025, and, on March 3, 2026, stayed the administrative review

[2] The court relies on judicial notice and the publicly available dockets in Hernandez-Caceres's matters to fill gaps left in the respondents' exhibits.

proceedings pending a decision by the circuit court in three consolidated matters.[3] Hernandez-Caceres v. Atty. Gen., No. 25-1643, (3d. Cir) (Docs. 8, 28, 39).

ICE reinstated the petitioner's final order of removal on December 17, 2025. (Doc. 6-10, A. Campbell Decl. ¶ 23). That order, from July 2009, authorizes petitioner's deportation under 8 U.S.C. § 1227(a)(2)(A)(iii), for conviction of an aggravated felony.[4] (Doc. 6-2 at 3).

Hernandez-Caceres has been in immigration detention for approximately nine months. The parties portray the petitioner's detention as being governed by 8 U.S.C. § 1231(a) since the petitioner is subject to a final reinstated order of removal. (Doc. 6, Resp. at 1, 8–11, 13–16; Doc. 7, Traverse at 4–5). Under Section 1231(a), detention is mandatory for 90 days—referred to as "the removal

---

[3] As the government indicates, Hernandez-Caceres's removal order is stayed while the circuit court resolves "whether equitable tolling applies to the 30-day statutory deadline for petitions for review of removal orders." (Doc. 6, Resp. at ECF p. 16).

[4] A separate provision of the Immigration and Nationality Act applies to Hernandez-Caceres given the reinstated removal order:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).

period"—and then detention is discretionary after that period ends. 8 U.S.C. § 1231(a)(1)(A), (a)(2)(A), (a)(6). The statute, however, has other mechanics. The removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Here, the removal order was entered in July 2009 and reinstated in December 2025, but Hernandez-Caceres's removal has been stayed while his petition for review remains pending before the Third Circuit Court of Appeals. By the text of the statute, his removal period under 8 U.S.C. § 1231(a)(1) has not even started yet.[5] Leslie v. Att'y Gen. of U.S., 678 F.3d 265, 270 (3d Cir. 2012),

---

[5] A later nonprecedential case, Jackson v. Attorney General United States of America, rejected arguments that 8 U.S.C. § 1226 applied where a stay was not issued in connection with the Third Circuit's review of a removal order, but was issued pending transfer of a different motion back to the district court. 663 F. App'x 245, 247 n.1 (3d Cir. 2016). In this case, the Third Circuit's stay order merely indicates: "Petitioner's motion for a stay of removal is granted. See Nken v. Holder, 556 U.S. 418, 434 (2009)." Hernandez-Caceres v. Atty. Gen., No. 25-1643 (3d Cir. (Doc. 28). The citation to Nken is to the portion of the opinion discussing the four factors a petitioner needs to obtain a stay, including a strong showing of likelihood of success on the merits. 556 U.S. at 434. Based on this citation, the court can only conclude that the stay imposed by the Third Circuit is due to judicial review of petitioner's removal order.

abrogated in part on other grounds by Jennings v. Rodriguez, 583 U.S. 281 (2018). Instead, a different "pre-removal" statute, 8 U.S.C. § 1226, applies to the petitioner's detention. Id. Due to his conviction of an aggravated felony, Hernandez-Caceres's detention is governed specifically by Section 1226(c), which provides that the government "shall take into custody" any non-citizen who "is deportable by reason of having committed any offense covered in" Section 1227(a)(2)(A)(iii). 8 U.S.C. § 1226(c)(1)(B).

Section 1226(c) is a mandatory detention statute. 8 U.S.C. § 1226(c)(1). It does not limit the length of the detention it authorizes, Jennings, 583 U.S. at 303, but "a petitioner may still bring an as-applied constitutional challenge alleging that his continued detention has become unconstitutional under the Due Process Clause of the Fifth Amendment." Ibrahim v. Superintendent of Miami Corr. Facility, 821 F. Supp. 3d 490, 496 (M.D. Pa. 2026) (Wilson, J.) (citing German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 208–09 (3d Cir. 2020)). In such as-applied challenges, "when detention becomes unreasonable, the Due Process Clause demands a hearing." German Santos, 965 F.3d at 210 (quoting Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011)).

Reasonableness is "a 'highly fact-specific' inquiry." Id. (quoting Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 474 (3d Cir. 2015)). In this circuit, there is a non-exhaustive list of four factors to consider in assessing

whether an alien's detention has grown unreasonable: 1) duration of detention; 2) whether the detention is likely to continue; 3) the reasons for the delay; and 4) whether the conditions of confinement are meaningfully different from criminal confinement. Id. at 211 (citations omitted).

***Duration of Detention*** – Duration of detention is the most important factor. Id. Under the case law, there is no "presumption of reasonableness or unreasonableness of any duration." Id. (citing Chavez-Alvarez, 783 F.3d at 475 n.7; Diop, 656 F.3d at 234). The longer noncitizens are detained under Section 1226(c) without bond hearings, however, "the more likely their detention abridges the liberty secured by the Due Process Clause." Michelin v. Warden Moshannon Valley Corr. Ctr., 169 F.4th 418, 433 (3d Cir. 2026) (citations omitted). In Michelin, the Third Circuit reiterated clearly: "Detention becomes more and more suspect after five months" for Section 1226(c) detainees. Id. (quoting German Santos, 965 F.3d at 211)).

As it stands, Hernandez-Caceres has been detained by ICE for approximately nine months without a bond hearing.[6] That is less than the periods typically found unreasonable in this district for Section 1226(c) detainees,

[6] Respondents argue that Hernandez-Caceres received due process protections in the form of a file custody review by the agency in April 2026. (Doc. 6, Resp. at ECF p. 17; Doc. 6-9, Notice). A file custody review is an internal, administrative paper review conducted by ICE officials, whereas a custody redetermination hearing or bond hearing is a more formal proceeding before an immigration judge. Compare 8 C.F.R. §§ 241.4, 241.13 with 8 C.F.R. § 1003.19. Respondents' due process counterargument is not compelling.

at least in the decisions before the Third Circuit's discussion in Michelin. See Yirenkyi v. Hoover, No. 3:25CV2414, 2026 WL 268230, at *4, and Appx. (M.D. Pa. Feb. 2, 2026) (collecting cases). After nine months, constitutional concerns are beginning to accrue with respect to the petitioner's detention. However, the duration factor weighs only slightly in favor of relief, if at all.

With that said, duration is only one factor and there are no bright lines in the reasonableness analysis. See Chavez-Alvarez, 783 F.3d at 474 n.7. The Fifth Amendment requires a more granular review of the other facts of this case.

***Likelihood of Continued Detention*** – The second German Santos factor considers the likelihood of continued detention. This factor weighs in favor of relief. Hernandez-Caceres has filed a petition for review of his reinstated removal order with the Third Circuit Court of Appeals. In addition to staying removal, the Third Circuit has also stayed review of his petition until after it addresses whether equitable tolling can be applied to such petitions. No matter where petitioner's proceedings go from here, detention is foreseeably measured in at least several more months. This factor favors granting the habeas petition.

***Reasons for the Delay*** – The third German Santos factor considers the reasons for the delay, "such as a detainee's request for continuances." 965 F.3d at 211 (citing Diop, 656 F.3d at 234; Demore v. Kim, 538 U.S. 510, 531 (2003)). The court also asks "whether either party made careless or bad-faith 'errors in

the proceedings that cause[d] unnecessary delay.' " Id. (quoting Diop, 656 F.3d at 234) (alteration in original). There is no evidence of either side delaying removal proceedings or requesting continuances. The court does not hold petitioner's appellate review against him. Therefore, this factor is neutral. See id. at 212.

***Conditions of Confinement*** – The fourth German Santos factor requires a determination of whether "the alien's conditions of confinement are meaningfully different from criminal punishment." Id. at 211 (cleaned up). Under the law, "if an alien's civil detention . . . looks penal, that **tilts the scales** toward finding the detention unreasonable." Id. (citing Chavez-Alvarez, 783 F.3d at 478) (emphasis added)).

FCI-Lewisburg is a medium security federal prison. Hernandez-Caceres indicates that federal prisoners there have more privileges than the immigration detainees at this penitentiary. (Doc. 1, Pet. at 2). He complains of strip searches to and from visitation periods and mold in the cells and showers. Id. These assertions go unrebutted in the government's response. Petitioner has thus persuaded the court that his civil immigration detention is indistinguishable from criminal punishment. This factor weighs heavily in Hernandez-Caceres's favor.

***Balancing the Factors*** – On the balance of the non-neutral German Santos factors, the conditions of confinement and likelihood of continued

confinement weigh heavily in favor of granting relief. The petition for writ of habeas corpus will be granted in part.[7]

***Form of Relief*** – This determination does not entitle Hernandez-Caceres to outright release from detention as requested. Rather, because of the violation of his due process rights, the petitioner is entitled to a timely bond hearing before a neutral and impartial IJ. At the bond hearing, the government will bear the burden of justifying petitioner's continued detention by clear and convincing evidence that "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community." German Santos, 965 F.3d at 213–14.

Consequently, for the reasons set forth above, it is hereby **ORDERED** that:

1) Pedro E. Hernandez-Caceres's petition for writ of habeas corpus, (Doc. 1), is **GRANTED in part**;
2) Hernandez-Caceres's detention is governed by 8 U.S.C. § 1226(c); however, such detention without a bond hearing has grown unreasonable and violates the petitioner's right to due process of law;

[7] The habeas petition raises several additional claims, including under other federal statutes. Petitioner, however, only seeks release from custody. Given the habeas relief afforded, the court need not address such claims. Should petitioner wish to pursue these claims for the purposes of anything other than release, he must do so in a separate action.

3) The government shall, **within 14 days**, provide Hernandez-Caceres with an individualized bond hearing before an IJ in accordance with the analysis in the memorandum order;

4) At that hearing, the government will bear the burden of establishing by clear and convincing evidence that Hernandez-Caceres's continued detention is necessary because he presents a flight risk or danger to the community if released;

5) On or before **September 18, 2026**, respondents shall file a declaration pursuant to 28 U.S.C. § 1746 confirming that Hernandez-Caceres has received a bond hearing;

6) The Clerk of Court is directed to enter judgment in this case in accordance with this memorandum order; and

7) The Clerk of Court is directed to close this case.

**BY THE COURT:**

**Date:** 9/4/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**